ST. LOUIS SOUTHWESTERN RY. CO. OF TEXAS et al. v. BURRUS MILL & ELEVATOR CO. (No. 1337.)

(Court of Civil Appeals of Texas. Texarkana. May 21, 1914.)

1. CARRIERS (§ 122*)—CARRIAGE OF GOODS— ABILITY OF CARRIER.

Where a shipment of goods was only partially destroyed by the carrier's negligence, neither the consignee nor the shipper is justified in abandoning the shipment and charging the carrier with its full value; hence, where the goods were again damaged after the refusal of the consignee to accept the goods, and of the shipper to give instructions for disposition, the shipper is not entitled to recover full amount of the damage in an action based solely on the carrier's liability as such.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 537, 538, 557–559; Dec. Dig. § 122.*]

2. CARRIERS (§ 140*)—CARRIAGE OF GOODS— LIABILITY.

Where, on delivery the consignee refused to accept a shipment, and the consignor declined to give orders for its disposition, the carrier's liability as such ended, and it was thereafter liable only as a warehouseman.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 609, 609½, 611–616; Dec. Dig. § 140.*]

Appeal from Tarrant County Court; Chas. T. Prewett, Judge.

Action by the Burrus Mill & Elevator Company against the St. Louis Southwestern Railway Company of Texas and another. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

On December 16, 1910, the appellee shipped a car load of flour and shorts from Ft. Worth, under through bill of lading, to Fincher Bros., as consignees, at Waldo, Ark. The goods were billed to Fincher Bros. on open account, as previously agreed upon, and appellee prepaid all freight charges to and received the through bill of lading from the Ft. Worth & Denver City Railway Company. On arrival of the shipment at destination the agent of the delivering carrier, the St. Louis Southwestern Railway Company, after properly placing the car, tendered delivery of the same to the consignees. The consignees immediately after the tender by the agent opened the car and found by examination that the flour and shorts were somewhat damaged by rain as a result of the car being defective and leaky. There was no total or substantial destruction of the shipment; but some of the barrels of flour and shorts were partially damaged. On account of this damage the consignees refused to further receive the shipment from the railway company, or to give orders for the disposition of the same.

───────

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

After the car had been refused by the consignees, the agent notified the appellee, who also at once refused to give any instructions for disposition of the car. About three days after the refusal to accept the freight, and while the car was at the location previously tendered for unloading, a hard rain fell, causing further and more serious damage to the goods in the car.

The appellee brought the suit, under the contract of shipment, for the full market value of the entire shipment. After the suit was instituted, the appellee and the appellants, by an agreement without prejudice to the suit, made an agreement for the sale of the contents of the car, and that the proceeds of the sale, less expenses incurred, be paid over to and received by appellee. The amount received by appellee as the net proceeds of the sale, and eliminated from the suit under the agreement, was $360.70. The further sum of $360.70, it is admitted in the evidence, was the aggregate value of the loss sustained by the wetting of the goods in the two separate instances. The appellee recovered judgment for the latter $360.70. The witnesses testify that the contents of the car at the time and in the condition tendered by the appellants had a greater market value than before being rained on after the refusal to accept the delivery, and that the goods still had the market value of several hundred dollars after being rained on the second time. But the evidence fails to show the amount of the damage to such part of the goods that got wet in transit, and before tender of delivery, or to present any data sufficient to determine the amount.

Thompson & Barwise and A. C. Wood, all of Ft. Worth, for appellants. McGown, Murphy & McGown, of Ft. Worth, for appellee.

LEVY, J. (after stating the facts as above). [1, 2] The only serious error presented by the assignments is, we think, that of excessive verdict under the facts in the record. The evidence showed admittedly that at the time the shipment was tendered to the consignees, and by them refused, there was not a total or substantial destruction, but only a partial injury, to part of the contents of the car. This fact being true, neither the consignees, as owners, nor the shipper, in virtue of the contract of shipment, was justified in abandoning the shipment and charging the carrier the full value. Railway Co. v. Everett, 37 Tex. Civ. App. 167, 83 S. W. 257; Railway Co. v. Pitts & Sons, 37 Tex. Civ. App. 212, 83 S. W. 727; Railway Co. v. Mercantile Co., 104 S. W. 1072; Railway Co. v. Moore, 47 Tex. Civ. App. 531, 105 S. W. 532; Hutchinson on Carriers, § 1365. The appellant's liability as a carrier to appellee must therefore be measured by the amount of the damage to the contents of the car in transit, and to the time of the tender of the freight,

which fulfilled the contract of transportation. The evidence fails to fix the amount of that damage or present any data sufficient to determine the amount. The $360.70 shown in the evidence to be the full damage to the contents of the car chiefly occurred, as must be inferred from the evidence, after the tender and refusal to accept the shipment. And neither the jury nor this court would be warranted in saying how much of the damage occurred before the tender. The appellants having fulfilled the contract of transportation when the goods were tendered for delivery at destination, they were, after the delivery had been rejected, in legal effect discharged from the responsibility imposed upon them as carriers of the goods, and thereafter the relation and duties of the carrier towards the goods in their possession, with respect to the care necessary to protect them against injury or loss for the owner, was that of a warehouseman. Whether that liability would in this case be cast upon the initial carrier under the contract sued on is not a question involved in this appeal, for appellee's pleading does not warrant a recovery against appellants, or either of them, in the relation of warehousemen. Concluding, as we do, that under the evidence the amount of recovery had in this case is excessive, the tenth assignment, making the point, should be sustained. As the evidence in the record does not enable the court to. fix. the amount appellee should recover, the amount of remittitur cannot be suggested. Therefore the judgment is reversed, and the cause remanded.

It is suggested that the instruction complained of in the eighth assignment is not to be understood as being approved as correctly measuring appellants' liability under the facts in this record.