E. M. WHITTINGTON v. SOUTHERN RAILWAY COMPANY.

(Filed 15 November, 1916.)

### 1. Carriers of Goods—Damaged Shipments—Refusal of Shipment.

Damages to a shipment of goods by a railroad company, caused by the carrier's negligence, does not justify the owner in refusing to accept them on that account, unless the damages are sufficient to render the goods practically worthless; for he is required ordinarily to accept the goods and sue for the damages upon the refusal of the carrier to pay them.

### 2. Same—Pleadings—Damages.

Where an owner of a shipment of goods has refused to accept them from the carrier on account of their damaged condition, his refusal will not prevent his recovering for the damages sustained, if he has properly pleaded them. His evidence is sufficient to sustain a recovery, and the liability of the defendant is not thereby increased.

### 3. Carriers of Goods—Damaged Shipment—Measure of Damages.

The measure of damages to a shipment of goods by a railroad company is the difference in value between the value thereof in their damaged condition at destination and what their value would have been had they been properly transported, or handled, by the carrier.

### 4. Carriers of Goods—Consignor—Owner—Trials—Evidence.

It is competent for the consignor of goods to show by parol that he is the owner thereof, and recover damages from the common carrier caused by its negligence.

CIVIL ACTION tried before *Cline, J.,* at March Term, 1916, of GUIL-FORD.

This is an action to recover of the defendant damages for injury to certain machinery and supplies shipped by plaintiff from Macon, Georgia, to Kernersville, North Carolina. The shipment consisted of knitting-mill machinery and supplies delivered to the Central of Georgia Railway Company on or about 30 September, 1912, and consigned to J. A. Holloman at Kernersville, North Carolina. When this car reached its destination the machinery and supplies therein were damaged. The defendant received the car containing the shipment from the Central of Georgia Railway Company, and the defendant was the

delivering carrier. The admissions in the pleadings establish the following facts: (1) That the defendant is a common carrier of passengers and freight for hire, and as such maintains and operates a line of railway connecting with the Central of Georgia Railway Company in the State of Georgia to Kernersville, North Carolina; (2) that on or about 30 September, 1912, plaintiff delivered to the Central of Georgia Railway Company a car-load of knitting-mill machinery and supplies, to be transported from Macon, Georgia, to Kernersville, North Carolina; that said machinery was consigned to J. A. Holloman; (3) that the Central of Georgia Railway Company· is one of an association of common carriers formed by itself and the Southern Railway Company, and as such issued to the plaintiff for a valuable consideration a through bill of lading for said machinery and supplies from Macon, Georgia, to Kernersville, North Carolina; (4) that the machinery and supplies for which damages are claimed in this action were actually delivered to the said common carrier for transportation; (5) that plaintiff gave notice and made a claim for the loss and damage claimed by him within the time prescribed by the terms of the bill of lading.

The plaintiff offered evidence tending to prove that the shipment was damaged by the negligence of the defendant.

The plaintiff also offered evidence to prove that he was the owner of the property, although consigned to Holloman. This evidence was objected to by the defendant.

The plaintiff also offered evidence that he had a contract for the sale of the property for about $3,000. This evidence was admitted over the objection of the defendant, but was afterwards withdrawn from the jury by the court.

The plaintiff refused to receive any part of the shipment, although it was not a total loss.

The defendant moved for judgment of nonsuit, which was refused, and it excepted.

There was a verdict and judgment for the plaintiff, and the defendant appealed.

*Brooks, Sapp & Williams for plaintiff.*
*Wilson & Ferguson for defendant.*

ALLEN, J. The motion for judgment of nonsuit is upon two grounds:

1. That as the shipment was not totally destroyed and worthless, it was the duty of the plaintiff to receive the goods, and as he refused to do so, he cannot maintain this action to recover damages.

2. That the cause of action alleged in the complaint is not to recover the damages to the goods, but their value, and as such cannot be maintained, because the goods were not worthless and the plaintiff refused to receive them.

The principle for which the defendant contends is sound, and is thus stated in 3 Hutchison on Carriers, sec. 1365: "As a general rule, the doctrine that where goods are injured the owner may abandon them as for a total loss, and sue for their value, does not apply to contracts of affreightment. The fact, therefore, that the goods were injured upon the journey through causes for which the carrier is responsible, does not of itself justify the consignee in refusing to receive them, but he must accept them and hold the carrier responsible for the injury"; and in *Wilkins v. R. R.,* 160 N. C., 58, which was a case of total loss: "In contracts of affreightment the consignee under an ordinary bill of lading may not, as a general rule, reject the goods because the same have been wrongfully damaged in the course of shipment. Under usual conditions he must receive the goods and hold the company for the injury done; and he is required further to do what good business prudence would dictate in the endeavor to minimize the loss. The principle, however, does not obtain when the 'entire value of the goods has been destroyed and the injury amounts practically to a total loss.' In such case the consignee is justified in refusing the goods, and may sue for the entire amount."

Note, however, that when the loss is partial the doctrine is that the owner cannot reject the goods and recover the *value,* and not that he cannot recover the damages actually sustained; and this distinction is found in all the authorities.

In the case from Texas, cited by the defendant, the Court says: "Where a shipment of goods was only partially destroyed by the carrier's negligence, neither the consignee nor the shipper is justified in abandoning the shipment and charging the carrier with its full value." *R. R. v. Elevator Co.,* Texas (Tex. Civ. App.), 168 S. W., 1028. And in the case from South Carolina: "A carrier having goods in possession for transportation acquires no title to them, as the goods remain the property of the owner. His right of action against the carrier is for the entire value of the goods if lost, or made entirely worthless by the carrier's default; and in case of destruction of value, the recovery is not affected by the owner's acceptance or his refusal to accept the goods. On the other hand, if the value is merely impaired by actual injury in the hands of the carrier, or by delay in the carrier, the consignee is bound to receive the goods, and his right of action is limited to the impairment of value due to the delay in carriage or injury to the goods." *McGrath v. R. R.,* 91 S. C., 552.

In *Parsons v. Express Co.,* 25 L. R. A. (N. S.), 843, the plaintiff refused to receive the shipment, and sued to recover the value, and the Court held that the "Defendant was entitled to have the case submitted upon a proper theory, and the verdict of a jury upon the amount of plaintiff's damage, which was the difference between the value when delivered to the express company for shipment and its value when finally tendered to plaintiff at its destination," and *R. R. v. Cumbie,* 141 S. W., 939; *R. R. v. Everett,* 37 Tex. Civ. App., 167; and *R. R. v. Moore,* 47 Tex. Civ. App., 531, are to the same effect.

This is the rule applied by his Honor, as he instructed the jury that the measure of damage was "The difference between the value, reasonable market value, of the shipment at the time it reached Kernersville, in the condition it then was, and what would have been a reasonably fair value of that same shipment at Kernersville at the same time, but for the damage suffered by it or sustained to it, owing to the negligence of the defendant. You would take and apply the rule this way: You would say, What would have been our finding as to a fair valuation of that shipment if it had come from Macon to Kernersville in as good plight and condition as it was shipped? And then you would ask the second question, What is the depreciation, how much was that machinery lessened in value when it came to Kernersville, on account of the negligent failure of the defendant to transport it safely? And that difference would be the measure of damages."

This rule is not only supported by authority, but seems to be reasonable and just, and it imposes no additional burden on the carrier.

If the plaintiff had received the shipment he would have been entitled to recover as damages the difference between the value of goods in their damaged condition and their value if they had not been damaged, which is all he has recovered, and we see no reason for denying this recovery because of refusal to receive the shipment, when this has in no way increased the liability of the defendant.

We are also of opinion that the complaint alleges a cause of action, which is sustained by the verdict.

It alleges that the defendant received the shipment, that it was damaged during transportation by the negligence of the defendant, and that the plaintiff has suffered damages in the sum of $3,000 by reason of the failure of the defendant to properly and safely haul, transport, and deliver the machinery and supplies aforesaid, and in carelessly and negligently breaking, damaging, and destroying said machinery and supplies while the same was being carried and transported as aforesaid.

The evidence introduced to prove that the plaintiff, who was the consignor in the bill of lading, was the owner of the goods, was com-

petent. *Summers v. R. R.*, 138 N. C., 295; *Rollins v. R. R.*, 146 N. C., 153; *Cardwell v. R. R.*, 146 N. C., 218.

The evidence of a contract for the sale of the goods by the plaintiff was withdrawn from the jury.