PANTAZE et al. v. FARMER.. (No. 8862.)

(Court of Civil Appeals of Texas. Ft. Worth. May 11, 1918. Rehearing Denied June 8, 1918.)

1. JUDGMENT ⊂⇒256(2)—VERDICT.
Under Vernon's Sayles' Ann. Civ. St. 1914, art. 1990, judgment must follow verdict of jury on special issues, unless same is set aside and new trial granted, even though verdict be so erroneous as to require granting of new trial after judgment is rendered.

2. LANDLORD AND TENANT ⊂⇒231(2)—RENT —ACTION—EVIDENCE—MATERIALITY.
In landlord's action for rents and foreclosure of lien, defendants claiming damages under allegations landlord's agent in suing out distress warrant was moved by malice, testimony of agent that up to time he sued out warrant he knew defendant tenant owed good many creditors, and that several were pressing him, was admissible as material.

3. EVIDENCE ⊂⇒423(8) — PAROL EVIDENCE AFFECTING WRITING—LEASE.
In landlord's action for rent and to foreclose lien, testimony of tenant that when he signed lease with another defendant he and landlord's agent agreed in parol that he should not be liable as principal, but only as guarantor or surety, was inadmissible as varying a writing.

4. LANDLORD AND TENANT ⊂⇒231(2)—RENT —ACTION—EVIDENCE—MATERIALITY.
In landlord's action for rent and to foreclose lien, tenant claiming he was merely surety or guarantor, and not principal to lease, also that he had sold business, proof that during year in question place was listed in telephone directory in his name, as it had been, was admissible.

5. APPEAL AND ERROR ⊂⇒1050(1) — HARMLESS ERROR—EVIDENCE.
Appellants cannot complain of the admission of testimony, where substantially the same testimony was brought out by themselves on direct examination of the witnesses.

6. EVIDENCE ⊂⇒318(7)—HEARSAY—EX PARTE AFFIDAVIT.
In landlord's action for rent and to foreclose lien, ex parte affidavit of tenant that he bought furniture and fixtures, and took possession, and operated rented restaurant until certain date on his own account, was inadmissible as hearsay.

7. APPEAL AND ERROR ⊂⇒213—RESERVATION OF GROUNDS OF REVIEW—EXCEPTION TO REFUSAL OF ISSUE.
Where appellants took no bill of exception and made no objection of any character in trial court to refusal to submit issue, they waived right to complain, in Court of Appeals, of refusal of their request for submission.

8. TRIAL ⊂⇒350(4)—SPECIAL ISSUE—MATERIALITY.
In landlord's action for rent and to foreclose lien, defendants bringing cross-actions for damages, alleging a sale of the business, etc., the special issue whether the bill of sale made by a tenant to another was in good faith was material.

9. LANDLORD AND TENANT ⊂⇒80½—ASSIGNMENT—ACCEPTANCE OF NEW TENANT.
Where landlord's agent, after tenant's sale of his restaurant business and personalty in the premises, received rent payments from the buyer and called on him for further payment, the landlord did not thereby necessarily accept the buyer as a tenant.

⊂⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**10. APPEAL AND ERROR ⟨Key⟩750(4)—ASSIGNMENT OF ERROR — SUFFICIENCY TO RAISE QUESTION.**

Question whether or not evidence was sufficient to support jury's verdict requiring decree of foreclosure of landlord's lien cannot be raised by assignment of error in rendition of judgment foreclosing landlord's lien.

**11. APPEAL AND ERROR ⟨Key⟩742(1)—ASSIGNMENT OF ERROR—PROPOSITION NOT GERMANE.**

Proposition that in no event could foreclosure of landlord's lien be decreed for amount in excess of particular amount is not germane to assignment that no foreclosure at all should have been decreed.

**12. LANDLORD AND TENANT ⟨Key⟩274(2)—MALICIOUS DISTRESS—TENANT'S RIGHT OF ACTION.**

Where tenant of restaurant premises sold personalty and business colorably to another, business being of no value to him or his vendee, and personalty having no rental value, he and his vendee could not recover, in landlord's action for rent and to foreclose lien, damages on their cross-actions on ground distress warrant had been maliciously sued out.

**13. APPEAL AND ERROR ⟨Key⟩262(1)—SUBMISSION OF ISSUES — FAILURE TO OBJECT — WAIVER.**

In absence of exception to submission of any of the issues, appellants waived right thereafter to complain that evidence was insufficient to support findings not so objected to.

**14. LANDLORD AND TENANT ⟨Key⟩277(4)—TERMINATION OF LEASE—RE-ENTRY.**

Where constable, in taking possession of leased building and ousting person in possession under tenant, was not acting under direction of landlord's agent, act did not terminate lease, which provided it should terminate on re-entry.

Appeal from District Court, Tarrant County; Bruce Young, Judge.

Suit by E. D. Farmer against J. D. Pantaze and others. From judgment for plaintiff, the named defendant and another appeal. Affirmed.

E. G. Senter, of Washington, D. C., and Bryan, Stone & Wade, of Ft. Worth, for appellants. McLean, Scott & McLean, Wm. L. Evans, and Leonard M. Levy, all of Ft. Worth, for appellee.

DUNKLIN, J. E. D. Farmer sued J. D. Pantaze and N. Vratis to recover rents alleged to be due on a storehouse in Ft. Worth and for a foreclosure of a landlord's lien on the furniture, fixtures, and other personal effects situated in the building. Plaintiff's claim for rents and landlord's lien was predicated upon a certain written lease contract between him and the defendants, dated March 20, 1915, by the terms of which the premises were left to Pantaze Bros., a firm composed of J. D. Pantaze and N. Vratis from March 1, 1915, to July 31, 1916, for a consideration of $4,125, payable in equal monthly installments of $275. The lease was duly executed by plaintiff and defendants. Among others, the lease contained a stipulation to the effect that default in payment of rents for 5 days after the same became due or the subletting of the premises without the written consent of the landlord

would give plaintiff the right, without notice or demand, "into said premises to re-enter, and the same to have again, repossess and enjoy as in his first and former estate; and thereupon this lease and everything therein contained on the said lessor's behalf to be done and performed, shall cease, determine and be utterly void." The lease also contained the following stipulation:

"That for the whole of said rents to be paid by said lessees as aforesaid, a lien is hereby reserved upon the premises hereby leased, the interest of said lessees in and to the same, and the property of the said lessees upon said premises, in favor of the said lessor or his assigns prior and preferable to any and all other liens thereupon whatsoever."

In his answer to the petition defendant Pantaze denied that he was ever a partner with defendant Vratis in leasing the property, and alleged that the lease was in fact made to Vratis, and that he executed the lease contract under an agreement with plaintiff that he did so only as a surety or guarantor for Vratis; that Vratis rented the property for restaurant purposes, and was the sole proprietor of the business therein conducted, and owner of the personal property therein used from March 20, 1915, until December 6, 1915, on which latter date he turned back to Pantaze the fixtures, furniture, and appliances in consideration of the cancellation of notes Pantaze held against him for the purchase price of said property, which Pantaze had sold to Vratis prior to the execution of the lease, and thereupon Pantaze sold the business, furniture, and fixtures to A. A. Contos, who then under an agreement with plaintiff to look to as his tenant, took charge and control of the premises and business, and continued to operate same until January 20, 1916, on which date he was dispossessed of said premises and personal property by the constable acting under and by virtue of a distress warrant sued out by plaintiff.

Pantaze further alleged that at the time of the levy of the distress warrant he held the vendor's lien notes of Contos against the property levied on, which lien was impaired as a result of said levy, and that he will probably lose his debt as a consequence, and that the writ was sued out by plaintiff maliciously without probable cause. Based on those allegations Pantaze prayed for judgment against plaintiff for actual damages in the sum of $3,000 and for exemplary damages in the same amount. In the alternative he also prayed for judgment against Contos for the agreed purchase price of the personal effects sold to him.

Plaintiff filed an amended petition, which was substantially to the same purport as his original petition, and in which he made Contos a party defendant also, upon allegations that Contos was setting up some claim of interest in the property levied on, which plaintiff prayed be precluded by the foreclosure of the landlord's lien asserted.

Contos also filed an answer, alleging the sale of the furniture and fixtures to him by Pantaze, the transfer of the lease to him by and with the consent of plaintiff, his occupancy of the premises as plaintiff's tenant from December 6, 1915, to January 20, 1916, when he was dispossessed by the officer levying the distress warrant. He further alleged that the distress warrant was sued out maliciously and because of his refusal to pay certain back rents owing by Vratis, which were past due more than 30 days, and by reason of that fact and the fact that more than 30 days had elapsed since Vratis vacated the premises plaintiff had lost any lien on the furniture and fixtures he may have had theretofore, and that by reason of the wrongful levy of the writ and the wrongful ouster of him from the possession of said premises and furniture and fixtures he had sustained actual damages in the sum of $6,524.75, for which he sued plaintiff, and he also claimed exemplary damages in the sum of $6,000.

The distress warrant which was sued out January 20, 1916, was quashed by order of court on June 20, 1916, because of a defective bond given by plaintiff as a basis therefor. The record shows that when the warrant was levied the constable making the levy not only took possession of the furniture, fixtures, and other effects then on the premises, but also took possession of the storehouse which he locked up and held, to the exclusion of the defendants, and none of the defendants was ever thereafter restored to possession of either the place of business, or its contents levied on.

Plaintiff recovered judgment against Pantaze for $2,350, which was the full amount of unpaid balance of the contract price of the lease for its entire term, and also for foreclosure of plaintiff's landlord's lien on the furniture, fixtures, and other effects situated in the building when the distress warrant was levied. Judgment was also rendered, denying to Pantaze and Contos any recovery against plaintiff, and further denying to Pantaze any recovery against Contos on his plea over against the latter. From that judgment Pantaze and Contos have prosecuted this appeal jointly upon a joint appeal bond and joint assignments of error.

Vratis was never served with process, and plaintiff's suit as against him was dismissed. Pantaze and Contos also filed pleadings against the constable and George Beggs, plaintiff's agent, who acted for him in suing out the distress warrant, asking for damages against them jointly with plaintiff for the wrongful levy of the writ and the ouster of Contos from possession of the building and furniture and fixtures, but neither of those persons was served with process, and accordingly such pleas over as to them was dismissed. Certain employés in the restaurant intervened, and judgment was rendered in their favor for claims for labor, of which no com-

plaint is made on this appeal by any of the parties.

Following are the special issues submitted to the jury and findings thereon, to wit:

"Question 1. Was the bill of sale to the property in controversy, made by J. D. Pantaze on December 6, 1915, to A. A. Contos, made in good faith? That is, did the said J. D. Pantaze actually intend thereby to convey to said A. A. Contos, and did the said A. A. Contos in good faith accept and agree to pay therefor the said property in controversy? Answer: No.

"(b) Or was the said transaction a fraudulent and simulated one between the said J. D. Pantaze and said A. A. Contos made for the purpose of hindering, delaying, or defrauding the creditors of said business? Answer: Yes.

"Question 2. Who was the actual owner of the property in controversy on 20th day of January, 1916? Answer: J. D. Pantaze.

"Question 3. Had J. D. Pantaze abandoned the premises in controversy on 20th day of January, 1916? Answer: Yes.

"Question 4. What, if anything, was the amount of the respective claims for labor performed of the following persons, to wit: George Vratis, Tom Mitchell, Tony Theos, and Emma Miskill? Answer: George Vratis $96.60; Tom Mitchell $2.50; Emma Miskill $5.16; Tony Theos $3.00.

"Question 5. Did Tol Johnson, the constable, act under the directions of George Beggs, the agent of the plaintiff, in making the levy in the manner in which it was made under the distress warrant? Answer: No.

"Question 6. What was the reasonable market value of the personal property levied upon by the constable at the time of the making of the levy? Answer: $2,500.00.

"Question 7. Did the business conducted upon the premises have any value apart from the personal property connected therewith at the time of the making of the levy; if so, what was its reasonable market value at the time? Answer: No.

"Question 8. What was the reasonable rental value per month of the personal property levied upon, at the time of the levy, if same had been removed from the premises where it was levied on? Answer: It had no rental value.

"Question 9. Whs the levy of the distress warrant maliciously made at the instance of the agent of the plaintiff, with the intent to injure, harass, and annoy the defendants Pantaze and Contos, or either of them? And if yes, then state which one, or, if both, so state. Answer: No.

"Question 10. If you answer the preceding question in the affirmative, you are instructed that it is your privilege to assess what is known as exemplary or punitive damages herein, and, if you so find, you will, in reply to this question state what amount you so assess. Answer:

"Question 11. What was the reasonable value of the merchandise levied upon by the constable? Answer: $50.00."

"Question 13. Did George Beggs at any time, either by his words or actions, agree that A. A. Contos, as the owner of said business, should occupy the premises in controversy or accept the said A. A. Contos as his tenant? Answer: No."

[1] The first assignment of error, which is the one principally stressed by appellants in their briefs, is addressed to the action of the trial court in refusing their motion for judgment to be entered in their favor upon all the controverted issues between them and plaintiff mentioned above; the motion being filed after the verdict of the jury had been returned, and before judgment was rendered. The

motion was predicated upon the claim therein made, in effect, that the uncontradicted proof was conclusive in appellants' favor on all the disputed issues presented by the pleadings of the parties. In other words, the motion was for a judgment in appellants' favor notwithstanding the verdict. This assignment is overruled because it is well settled that the judgment must follow the verdict of the jury on special issues, unless the same is set aside and a new trial granted, even though the verdict be so erroneous as to require the granting of new trial after judgment is rendered. Vernon's Sayles' Tex. Civ. Stats. art. 1990; Scott v. Farmers' & Merchants' Bank, 66 S. W. 485.

[2] The testimony of George Beggs, plaintiff's agent who instituted the distress proceedings, to the effect that prior to ●December 15, 1915, and up to the time he sued out the distress warrant, he knew Pantaze owed a good many creditors, and that several of them were pressing him for payment, was objected to on the ground that it was immaterial and irrelevant to any issue in the case. That objection was untenable, since the evidence was material upon the claim of both defendants for exemplary damages predicated upon allegations that in suing out the writ, Beggs was moved by malice and a desire to injure them. Furthermore, other testimony of Beggs to the same effect was introduced by plaintiff without objection thereto from defendants, and testimony of like character was brought out by defendants themselves upon cross-examination of Beggs as a witness.

[3, 4] There was no error in excluding the proffered testimony of Pantaze to the effect that when he signed the lease contract upon which the suit was predicated he and Beggs, who was then acting for plaintiff in the transaction, agreed in parol that Pantaze should not be liable as principal on said written lease, but should be bound only as a guarantor or surety for Vratis. The admission of such testimony clearly would have been a violation of the rule that contemporaneous parol agreements at variance with the written instrument cannot be proven, and that rule was invoked by plaintiff in his objection to the testimony. There was no error in admitting proof that during the entire year of 1915 the place was listed in the city telephone directory in the name of Pantaze Bros: Café, just as it had been previously listed. In view of testimony introduced tending to show that Pantaze knew of such listing and made no objection thereto, such evidence was a circumstance tending to refute the claim of Pantaze that he was not a party in interest with Vratis while the latter was in charge of the business, and that he made a bona fide sale of it to Contos on December 15, 1916.

[5] Complaint is made of admission in evidence over appellant's objection of the testimony of the constable, Tol Johnson, who levied the distress warrant, to the effect that while the witness had charge of the building under the levy made, plaintiff's agent Beggs told him that, if he (Beggs) had an opportunity to rent the building to some one else, the constable would have to vacate the same. Appellants are in no position to complain of the admission of that testimony, since substantially the same testimony was brought out by appellants themselves upon direct examination of the witnesses.

[6] The ex parte affidavit of Vratis, to the effect that in 1914 he bought the furniture and fixtures in question and took possession of the same on January 1, 1915, and operated the restaurant until December 6, 1915, on his own account, was clearly inadmissible, in view of the objection urged at the time by the plaintiff that it was hearsay.

[7] Complaint is made of the court's refusal of appellant's request for the submission of a special instruction, to the effect that it is not necessary to fix a landlord's lien that a distress warrant be issued and levied, but that the filing of the suit to foreclose the lien is sufficient to preserve the lien. Appellants have pointed out no bill of exception taken or objection of any character made in the trial court to the refusal by that court to submit that issue, and we have found none in the record. Under such circumstances they must be held to have waived the right to complain in this court of such ruling. G., T. & W. Ry. v. Dickey, 108 Tex. 126, 187 S. W. 184.

[8] Appellants complain of the submission of issue No. 1 to the jury shown above for three reasons: (1) That the issue so submitted was not presented by the pleadings; (2) that it was immaterial and irrelevant to any real issue in the case; (3) because there was no evidence tending to show that the alleged sale of the restaurant and its contents by Pantaze to Contos was a simulated transaction. Clearly, the issue was material in view of the cross-actions for damages against plaintiff by both Pantaze and Contos, predicated upon allegations of such transaction between Pantaze and Contos; and, without attempting to set out the evidence at length, we think it sufficient to say that it reasonably tended to support the finding of the jury upon that issue.

[9] We are of the opinion, further, that the evidence was also sufficient to support the jury's finding in answer to issue No. 13, submitted by the court, that George Beggs, representing plaintiff, did not agree to accept Contos as tenant of the premises. Furthermore, the only objection made during the trial to the submission of that issue was as follows:

"The undisputed testimony shows that George Beggs, acting as agent for the plaintiff, received rent payments from defendant Contos, and called upon him for further payment."

Even if that statement be true, it would not necessarily have the effect of binding the plaintiff to the proposition that he had accepted Contos as his tenant, and therefore the objection so urged did not present the specific question contained in the assignment now under discussion.

[10, 11] By another assignment complaint is made of error in the rendition of a judgment foreclosing plaintiff's landlord's lien upon the property in controversy. By one proposition submitted under this assignment appellants insist, as a basis for the contention asserted in the assignment, that the undisputed testimony showed that plaintiff had lost his lien at the time of the levy of the distress warrant, but just how it was lost appellants do not point out. By another proposition the contention is made that the evidence shows without controversy that on January 20, 1916, there was due only the sum of $608.33, which was the extent for which a foreclosure could be awarded in any event; and the third proposition is that the undisputed testimony showed an unlawful conversion of the property by the plaintiff by reason of the fact that plaintiff took possession of it under the distress warrant which was afterwards quashed.

In the first place, the decree of foreclosure of the landlord's lien was required by the verdict of the jury, and the question whether or not the evidence was sufficient to support the verdict cannot be raised by an assignment of this character. In the second place, the proposition that in no event could a foreclosure be decreed for an amount in excess of $608.33 is not germane to the assignment, in that the assignment is to the effect that no foreclosure at all should have been decreed. For these reasons the assignment is overruled.

[12] We are also of the opinion that there is no merit in other assignments presenting the contention that the undisputed evidence shows that Pantaze and Contos were each entitled to a judgment against plaintiff on their cross-actions, in view of the fact, as stated already, that the evidence was sufficient to support the jury's finding on the first and second issues that the alleged sale of the business and furniture and fixtures by Pantaze to Contos was fictitious, and that Pantaze owned the personal property levied on at the time of the levy, and in view of the further fact that, according to the findings of the jury, which are unassailed by appellants, the business conducted upon the premises at the time of the levy of the writ was of no value to the defendants, and that the personal property levied on had no rental value, and the further fact that, independent of the levy, plaintiff was entitled to a landlord's lien upon the personal property and to a foreclosure thereof.

By another assignment it is insisted that the court erred in denying to Pantaze a recovery against Contos on the cross-action of the former against the latter. This assignment is contained in the brief signed by counsel for both Pantaze and Contos, thus indicating that it is the desire of both that such a judgment should be rendered. To have rendered such a judgment would have been inconsistent with the judgment holding in effect that the alleged sale to Contos was simulated. Besides, courts are organized for the purpose only of determining controversies between parties. If there is no controversy between Pantaze and Contos with the respect to the alleged sale and the amount due thereon, no reason is perceived why they cannot adjust the matter satisfactorily out of court without the aid of a judgment.

[13] By other assignments of error complaint is made of the refusal of appellant's motion for a new trial: (1) Because the property was seized by an invalid distress warrant; (2) because the undisputed evidence shows that on January 1, 1915, Pantaze sold his interest in the property to Vratis, who held the same until the 6th of December, 1915, when he reconveyed it to Pantaze, who then immediately sold the same to Contos: that thereafter Contos was accepted as plaintiff's tenant; that at the time of the levy of the distress warrant plaintiff had lost his landlord's lien; that plaintiff caused the officer levying the writ to eject the defendants from the building, and thereby terminated the lease according to its terms. As noted already the evidence was sufficient to support the findings of the jury on issues Nos. 1 and 2 copied above. In the second place, no exception was reserved by appellants to the submission of any of the issues save and except issues Nos. 1 and 13. In the absence of such objection appellants waived the right to thereafter complain that the evidence was insufficient to support the findings that were not so objected to. For these reasons those assignments are overruled. G. T. & W. Ry. v. Dickey, 108 Tex. 126, 187 S. W. 184; Cleburne St. Ry. v. Barnes, 168 S. W. 991.

[14] By another assignment, it is insisted that the judgment for the sum of $2,350 was excessive; the contention being that only $608.33 could rightfully be recovered by the plaintiff in any event. This assignment is predicated upon the theory that the lease was terminated by the plaintiff on January 20, 1916, when the distress warrant was levied and the possession of the premises was taken over by the constable. As the jury found that the constable in taking possession of the building and ousting Contos therefrom was not under the direction of plaintiff's agent, and as that finding of the jury has not been attacked in any proper manner, it cannot be said that such action on the part of the constable had the effect to terminate the lease, and no contention is made that the amount for which the judgment was rendered was not the correct amount due by Pantaze for the un-

expired term according to his expressed agreement contained in the lease. Accordingly this assignment is overruled.

For the reasons stated the judgment is affirmed.

Affirmed.

CONNER, C. J., not sitting, serving on writ of error committee at Austin.